### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH PAOLA, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | :   Civ. No. 03CV1628 (WWE) |
| | : |
| | : |
| ARTHUR SPADA, JOHN BLASCHIK | : |
| and GEORGE LUTHER, | : |
| | : |
| Defendants. | : |

### RULING ON MOTION FOR SUMMARY JUDGMENT

In his two-count complaint, plaintiff Joseph Paola, a former Connecticut State Trooper with the Department of Public Safety ("DPS"), alleges violation of his constitutional rights pursuant to the First Amendment and Fourteenth Amendment by Arthur Spada, Commissioner of DPS, George Luther, formerly the Deputy Commissioner of DPS, and John Blaschik, Deputy State Fire Marshall. Defendants have filed a motion for summary judgment as to both counts. For the following reasons, the motion for summary judgment will be denied.

### BACKGROUND

The parties have submitted statements of fact, affidavits, and exhibits, which reveal the following undisputed facts.

Prior to his resignation on December 5, 2001, plaintiff worked as a Connecticut State Trooper within the DPS' Division of Fire, Emergency and Building Services. As of October 2000, plaintiff had the second highest seniority as a trooper assigned

to this unit.

On October 20, 2000, plaintiff's immediate supervisor, Sergeant Patrick Murphy, issued a Performance Observation Report ("POR") against plaintiff concerning an alleged failure to follow proper procedure relative to working on state business outside of the office.  Sergeant Murphy also requested an internal affairs investigation into this matter.

On October 26, 2000, DPS sent plaintiff to the hospital when participation in routine re-certification training with the use of a respirator revealed elevated blood pressure.  Plaintiff was subsequently diagnosed with uncontrolled hypertension secondary to stress caused by the job.

On October 30, 2000, plaintiff filed a complaint with DPS alleging that Sergeant Murphy was an incompetent supervisor, had allowed for the inappropriate use of state time, and had misallocated overtime.

The assigned internal investigator, Sergeant J. Paul Kenefick, expanded the investigation to review the conduct of two other officers in the Fire Marshal's office, Trooper First Class ("TFC") Jose Colon and TFC Julio Fernandez.

In November 2000, defendant Spada announced a temporary duty initiative ("TDY") to return an additional 60 troopers to road duty for a period of 90 days, commencing on January 1, 2001. According to Commissioner Spada, road duty is a dangerous assignment

On November 21, 2000, plaintiff met with his doctor for a

2

follow-up examination.  Due to plaintiff's hypertension, the doctor ordered a medical leave of absence of up to one month. Plaintiff's medical leave of absence commenced on November 22, 2000, and was scheduled for thirty days.

On November 24, 2000, plaintiff was informed that he had been selected by defendant Blaschik to participate in the TDY initiative upon his return from medical leave.  After plaintiff declined to choose among the troops designated for his TDY assignment, plaintiff was placed with Troop G in Bridgeport, which is one of two troops that Commissioner Spada considered to have the highest amount of accidents.  Plaintiff's assignment with Troop G was to commence on January 1, 2001 with an end date of March 31, 2001.

After expiration of his 30 day medical leave, plaintiff extended his leave of absence to April 2001 pursuant to the Family and Medical Leave Act.  Plaintiff's condition ultimately prevented his return to work until late November 2001.

On March 16, 2001, plaintiff was served with a complaint indicating that an internal affairs investigation was being conducted into his alleged misuse of a vehicle that had been assigned to him by the state.  This investigation was precipitated by inaccurate readings from a gasoline-monitoring device known as "the gasboy."  That same day, plaintiff received a hand-delivered letter signed by defendant Blaschik, ordering him to submit to a fitness for duty examination with a psychiatrist.  In a letter dated March 20, 2001, Robert Krzys,

3

counsel for the Connecticut State Police Union, informed defendant Blaschik that the order for a psychiatric examination constituted a violation of the existing collective bargaining agreement.

In a letter dated April 19, 2001, defendant Luther requested that plaintiff's "physician reevaluate" his "ability to perform some, or all, of the duties of a Trooper First Class and Trooper assigned to the Office of State Fire Marshal."

On July 10, 2001, Sergeant Kenefick completed his investigation of plaintiff's complaint.  In his Executive Summary, he wrote:

> As a result of the above information, it is determined that Sgt. Murphy used poor judgment in the allocation of manpower within his unit in order to prevent unnecessary overtime (reference Stratford funeral).  In addition he used poor judgment in his decision to bill overtime to an account that was clearly unrelated to the incidents that [the] detectives were actually at (Shelton fire and Stratford funeral).  His reasoning is believed to be incorrect, particularly when taken into account the purpose of an "eight hundred number" which is to accurately track time and money spent on a particular incident.

Sergeant Kenefick recommended that the complaints against Sergeant Murphy be sustained and that the complaints against TFC Fernandez and Colon not be sustained.  However, on August 9, 2001, defendant Luther issued a "Final Action" on plaintiff's complaint in which he sustained two of Kenefick's three recommendations without imposing any discipline upon Murphy. Defendant Luther considered plaintiff's complaint to be a

retaliation against Sergeant Murphy for his issuing a negative
POR:

> Detective Paola, in an obvious attempt to discredit Sgt.
> Murphy, used the issue of the POR to list other items that
> Det. Paola believed were improprieties on the part of Sgt.
> Murphy.  These alleged improprieties involved Sgt. Murphy's
> supervisory style, accounting for overtime, personnel
> assignments, and approval of training requests.  It is clear
> that Det. Paola was "keeping a book" on Sgt. Murphy.  The
> investigation did not show that Det. Paola was motivated out
> of concern for the effectiveness of the unit.  He was not
> monitoring his supervisor's activities for the benefit of
> the organization.  Det. Paola was collecting information on
> his supervisor in order to discredit Sgt. Murphy.

In his deposition, defendant Luther stated that, after
reading the investigation, he became angry that certain troopers
had given more information to the Internal Affairs investigator
than necessary.  He assembled several troopers and informed them
that if they did not like their work, they should find another
job.

In October 2001, plaintiff's assigned state vehicle was
taken back at the instruction of defendant Spada.  On November
13, 2001, plaintiff's gun, badge and Trooper identification were
taken from him, also at the direction of defendant Spada.
Sergeant Susan Kumro averred at her deposition that this practice
was generally reserved for situations in which the individual's
retention of such items could give rise to a dangerous situation
that could be detrimental to the department's liability.

Plaintiff attempted to meet with defendant Spada.  However,
his request was denied.

On November 26, 2001, plaintiff submitted a note from his physician, stating that he would be returning to work.  Plaintiff expected that he would return to his assigned position in the Fire Marshal's Office.

On November 27, 2001, plaintiff was advised that he was being transferred to road duty on the midnight shift at Troop G in Bridgeport, effective immediately.  Plaintiff submitted his resignation on December 5, 2001.  His resignation was made effective January 1, 2002.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

First Amendment Retaliation

Defendants argue that plaintiff's claim of First Amendment retaliation fails because he cannot establish that his speech was constitutionally protected, that he suffered from an adverse employment action, or that his speech was a motivating factor in the alleged adverse employment action.

A public employer enjoys broad discretion in managing the affairs of the office.  Connick v. Myers, 461 U.S. 138, 146 (1983).  However, "government employment does not result in the evisceration of an employee's First Amendment rights." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003).  It is well established that a public employer cannot retaliate against an employee who has exercised his right to free speech under the First Amendment.  Rankin v. McPherson, 483 U.S. 378, 383-84 (1987).

A plaintiff asserting First Amendment retaliation must show by a preponderance of the evidence:  1) that the speech was constitutionally protected; 2) that he suffered an adverse employment decision; and 3) that the speech at issue was a

7

substantial, causal or motivating factor in the decision.
Morrison v. Johnson, 429 F.3d 48 (2d Cir. 2005).  However, even
if a plaintiff can establish these elements, the government may
still prevail if it demonstrates that it would have taken the
same adverse action in the absence of the protected speech, or
that plaintiff's speech was likely to disrupt the government's
activities, and the likely disruption was sufficient to outweigh
the First Amendment value of plaintiff's speech.  Mandell v. The
County of Suffolk, 316 F.3d 368, 384 (2d Cir. 2003).

    This Court must first consider whether plaintiff's speech is
constitutionally protected, which presents a question of law.
Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781
(2d Cir. 1991), cert. denied, 502 U.S. 1013 (1991).  Speech by a
government employee is only protected if it addresses a matter of
public concern that must be determined by the "content, form, and
context of a given statement, as revealed by the whole record."
Connick, 461 U.S. at 147-48.  To fall within the realm of "public
concern," an employee's speech must relate to a matter of
political, social or other concern to the community, and the
employee must speak "as a citizen upon matters of public
concern," not simply "as an employee upon matters only of
personal interest." Pappas v. Giuliani, 290 F.3d 143, 152 (2d
Cir. 2002), cert. denied, 539 U.S. 958 (2003).  If an employee's
speech relates solely to issues that concern the employee
personally, the speech is generally not protected.  Ezekwo, 940
F.2d at 781.  The fundamental question is whether the employee is

8

seeking to vindicate personal interests or to bring to light a "matter of political, social or other concern."   Even if an issue could arguably be viewed as a matter of public concern, an employee's First Amendment right to comment on that issue is entitled to little weight if the issue was raised solely in order to further his own employment interest.   White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993), cert. denied, 510 U.S. 865 (1993).

Defendant argues that plaintiff's complaint was initiated as retaliation for Sergeant Murphy's filing the negative POR about him. Plaintiff's complaint alleged that Sergeant Murphy had issued a false negative POR, had allowed personnel to conduct personal business on department time, had misallocated reported overtime, and had mismanaged training class assignments.  The allegation concerning the POR and training classes concern matters internal to the department.  However, plaintiff's speech relative to the charging of overtime touches on a matter of public concern. Public interest is "near its zenith" when the speech concerns a public organization's operation in accordance with the law and ensuring the proper disposition of public funds. See Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir. 1986).   In this instance, the public interest is heightened since plaintiff's allegations concern the operation of DPS and state troopers. See Delgado v. Jones, 282 F.3d 511, 517 (7th Cir. 2002) (speech that focuses on police protection and public safety is generally considered a matter of public concern).  Management of

state resources and allocation of overtime is integral to public safety.  Accordingly, viewing the evidence most favorably to plaintiff, the Court finds that plaintiff's speech concerning overtime misallocation constitutes a matter of public concern.

Defendant counters that the context of plaintiff's speech defeats his assertion that his speech merits First Amendment protection as a matter of public concern.  Specifically, defendants cite to plaintiff's deposition statement that he wanted his allegations to be investigated internally rather than reported to a newspaper since he did not want to give the department a "black eye."  However, First Amendment protection is not lost where an employee communicates privately with his employer rather than spreading his views before the public. Ezekwo, 940 F.2d at 781.

Upon further review of the record, the Court finds that disputed issues of fact militate in favor of a jury's consideration of:  1) whether plaintiff was constructively discharged and thereby suffered an adverse employment action, and 2) whether the speech at issue was a substantial or motivating factor resulting in his constructive discharge.

Summary judgment will also be denied based on disputed issues of fact on defendants' assertion of qualified immunity.

Equal Protection

Defendants argue that they are entitled to summary judgment on plaintiff's "class of one" equal protection claim.

The equal protection clause extends to individuals with no

10

specific class membership but who have been intentionally treated differently from others similarly situated without a rational basis for that treatment.  <u>Harlen v. Inc. Vill. of Meneola</u>, 273 F.3d 494, 499 (2d Cir. 2001).  Upon review of the record, the Court finds that disputed issues of fact give rise to a jury question as to whether defendants treated plaintiff differently than similarly situated employees.  Summary judgment will be denied.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment [#46] is DENIED.  A status conference will be scheduled to discuss a date of trial.


So Ordered this 23d day of February, 2006.


_____/s/_____

WARREN W. EGINTON, SENIOR UNITED STATES DISTRICT JUDGE