UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH PAOLA, | : |
|     Plaintiff, | : |
| | : |
| v. | :   Civ. No. 03CV1628 (WWE) |
| | : |
| ARTHUR SPADA, JOHN BLASCHIK | : |
| and GEORGE LUTHER, | : |
| | : |
|     Defendants. | : |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

In his two-count complaint, plaintiff Joseph Paola, a former Connecticut State Trooper with the Department of Public Safety ("DPS"), alleges violation of his constitutional rights pursuant to the First and Fourteenth Amendments by Arthur Spada, Commissioner of DPS, George Luther, formerly the Deputy Commissioner of DPS, and John Blaschik, Deputy State Fire Marshall. Defendants have filed a motion for summary judgment as to both counts.

In a ruling dated February 23, 2006, the Court denied the motion for summary judgment as to both counts. After defendants appealed that ruling, the Second Circuit remanded the case for this Court's consideration of the First Amendment claim pursuant to Garcetti v. Ceballos, 126 S.Ct. 1951 (2006), and of the equal protection claim pursuant to the standard articulated in Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005).[1] For the following reasons, this Court will grant summary judgment as to plaintiff's equal protection claim only.

---

[1] Since the Second Circuit vacated this Court's prior decision, the Court considers all of the elements of plaintiff's complaint anew.

**BACKGROUND**

The Court assumes familiarity with the factual background of this case and incorporates herein the undisputed facts from the February 23, 2006 ruling. Pursuant to instruction from the Second Circuit, the parties have conducted discovery relevant to plaintiff's job duties. For purposes of this Court's consideration of Garcetti, the Court includes the undisputed facts relevant to plaintiff's exercise of free speech, and his duties as a state police trooper assigned to the Office of the State Fire Marshal, a specialized unit within the State Police.

The duties of a state trooper are set forth according to state statute, a written job description and the Department of Safety Administration and Operations Manual ("Manual").

Connecticut General Statutes section 29-7 states, "The Division of State Police within the Department of Public Safety, upon its initiative, or when requested by any person, shall, whenever practical, assist in or assume the investigation, detection and prosecution of any criminal matter or alleged violation of law."

The Department of Administrative Services' job description enumerates the duties of a state trooper, including "investigates instances of crime; depending on the nature of crime, acts as officer in charge or assist in conduct of criminal investigations. . . ."

The Manual states that "self-policing is an important function," and provides "No employee shall fail to report information to a superior, which may prove detrimental to the department. . . ."; "No employee shall fail to take personal action or report information to a superior or supervisor which could result in the . . . arrest of a law

violator . . ."; and "No employee shall conceal information essential to planning, providing or investigating police services."  The Manual also delineates the procedure for requesting an investigation through the chain of command and the conduct of that internal investigation.

On October 30, 2000, plaintiff met with Captain Paul Samuels, then head of Internal Affairs, to express his concerns regarding potentially unlawful conduct of his immediate supervisor, Sergeant Patrick Murphy.  Plaintiff reported that Sergeant Murphy had submitted false information in official documents, manipulated scheduling so that certain individuals would incur additional overtime, misallocated overtime expenses, and permitted employees to use state time and resources to perform personal work.  Captain Samuels informed him that he was obligated to report plaintiff's complaints to his supervisor, Colonel Bardelli.

Plaintiff then filed a complaint with the Internal Affairs Division, asserting that Murphy had provided false information in official reports, allowed for the inappropriate use of state time, misallocated overtime, and had displayed favoritism to co-workers in the assignment of overtime duties.  Plaintiff alleged that Murphy had misappropriated funds by switching work schedules for the purpose of incurring overtime and charging overtime to inappropriate accounts.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment

proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

First Amendment Retaliation

The Court must consider whether plaintiff's speech is entitled to First Amendment protection. Defendants argue that plaintiff's speech is not entitled to First Amendment protection and, even if it is, plaintiff cannot establish the requisite elements of his retaliation claim.

A plaintiff asserting First Amendment retaliation must show by a preponderance of the evidence: 1) that the speech was constitutionally protected; 2) that he suffered an adverse employment decision; and 3) that the speech at issue was a substantial, causal or motivating factor in the decision. Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005). However, even if a plaintiff can establish these elements, the government

may still prevail if it demonstrates that it would have taken the same adverse action in the absence of the protected speech, or that plaintiff's speech was likely to disrupt the government's activities, and the likely disruption was sufficient to outweigh the First Amendment value of plaintiff's speech. Mandell v. The County of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003).

The Court must first determine whether plaintiff was speaking as a citizen for First Amendment purposes pursuant to Garcetti v. Ceballos. Garcetti instructs "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S.Ct. at 1960. Thus, if plaintiff's speech was required by his job as a state trooper, then his statements are not protected speech. If not, the Court must consider whether plaintiff's statements addressed a matter of public concern. Connick v. Myers, 461 U.S. 138 (1983).

Garcetti involved a deputy district attorney, Richard Ceballos, who alleged retaliation based upon a disposition memo that he wrote recommending dismissal of a criminal case due to misrepresentations made in an affidavit to obtain a search warrant. Plaintiff Ceballos' daily professional activities included supervising attorneys, investigating charges, and preparing filings. The Supreme Court held that plaintiff's speech was not protected because he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." Garcetti, 126 S.Ct. at 1960.

The internal nature of Ceballos' memo and the fact that its subject concerned his employment were not dispositive of whether the speech was made as a citizen or public employee. The determinative issue was whether the speech was made pursuant to plaintiff's official job duties:

> Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do. It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

id..

In Garcetti, the parties agreed that plaintiff's speech was made pursuant to an official duty. Thus, the Supreme Court was not faced with a situation where a plaintiff's job duties do not specifically address the speech at issue, and it "had no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." Id. at 1961.

However, Garcetti offers guideposts as to how a court should consider the scope of an employee's official duties. See Morales v. Jones, – – F.3d – – , 2007 WL 2033754 *9 (7th Cir.) (concurrence). Garcetti instructed that the proper inquiry into whether speech was made pursuant to an official duty "is a practical one" and "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." 126 S.Ct. at 1961-1962. The

Court commented that "when a public employee speaks pursuant to employment responsibilities ... there is no relevant analogue to speech by citizens who are not government employees."  Id. at 1961   As the Supreme Court elaborated, the First Amendment protects an employee's letter to a local newspaper or political conversations between employees, which are statements outside of the course of performing employment duties and that represent the kind of activity engaged in by a person who does not work for the government.

Consonant with Garcetti's characterization of Ceballos' memo as "work product," this Court will inquire whether plaintiff's speech owed its existence to his professional responsibility, and whether it was the kind of activity engaged in by persons who do not work for the government.  See Morales, 2007 WL 2033754 at  *10.

The Court will also look to whether the written rules or job duties differ from actual performance of the job as condoned by the employer or from employer expectations of job duties.  See Barclay v. Michalsky, 451 F.Supp.2d 386, 395-96 (D.Conn. 2006).  In Barclay, a written rule providing that employees should report rule violations to their supervisors did not establish as a matter of law a nurse's official duty to file a complaint of employee misconduct; the court noted that there appeared to be no employee training about filing reports of work place rule violations, no complaint form existed, and the head nurse had reacted negatively to the filing of the complaint, stating "We don't do this kind of thing here. " See also Batt v. City of Oakland, 2006 WL 1980401 *5 (N.D. Cal. 2006) (work place culture discouraged officers from reporting misconduct).

In this instance, plaintiff's complaints concerning Murphy's submitting false information in official reports, misallocation of expenses and allowance of employees to use state time and resources to complete personal business constitute potential illegal conduct. His other assertions that Murphy exercised favoritism and mismanaged personnel encompass alleged non-illegal misconduct.

No written directive sets forth that plaintiff must file an internal complaint regarding misconduct of a superior or co-worker. Defendants submit that Connecticut General Statutes section 29-7, the DAS job description and the Manual mandate a state trooper's duty to participate in the investigation, detection and prosecution of any criminal matters or alleged violations of law. According to defendants' position, plaintiff acted in conformity with this mandate when he conferred with Captain Samuels of Internal Affairs regarding Sergeant Murphy's alleged illegal misconduct, and then further filed an internal complaint. Defendants provide the affidavit of Robert Corona, Captain in the Connecticut State Police, who avers that "it is understood among sworn officers within the Connecticut State Police that a trooper is required to report wrongdoing of a fellow officer to chain of command or Internal Affairs."

Plaintiff counters that his official duties, as a practical matter, do not comprise reporting employee misconduct and filing an internal complaint. In his affidavit, plaintiff avers that his daily duties ranged from "fire investigation, blasting and fireworks and pyrotechnical related issues, to special hazardous materials, fire code and various services and training to local fire marshals;" that he was "not employed as an Internal Affairs Investigator;" and had "no official job requirement to ferret out, investigate and prosecute criminal or other wrongdoing within the rank and file of the State Police."

8

Further, plaintiff maintains that such internal complaints were not expected or welcomed within the culture of the workplace. In support of this contention, plaintiff points out that George Luther, after his issuance of "Final Action" on plaintiff's complaint, was angered by reading troopers' statements in the investigation. He believed that they gave too much information, and he admonished the troopers who had cooperated with the investigation for giving too much information. He also indicated that they could transfer if they were not happy with their jobs.

The Court recognizes that investigating and reporting crime are generally the core functions of a law enforcement officer. Bland v. Winant, 2007 WL 1237846 *4 (D.N.J). Most recently, the Seventh Circuit, noting that the Milwaukee police department requires officers to report all potential crimes, held as unprotected a police officer's speech informing an assistant district attorney of the police chief's and deputy chief's harboring an individual wanted on felony arrest warrants. Morales, 2007 WL 2033754 *6. In that case, the officer conveyed his suspicions to the district attorney during a meeting necessitated by that officer's official duty to assist with the presentation of charges in a case that he was assigned to investigate.

Here, unlike the circumstances of Morales, plaintiff did not indisputably make his statements as a result of his fulfilling his assignments as a state trooper within the Division of Fire, Emergency and Building Services. The potential illegalities reported by plaintiff do not relate to his daily investigatory duties, such as investigation into fire hazards or a fire code violation.

Defendants' evidence indicates that plaintiff may well have been charged with the mandatory duty to report any and all potential criminal conduct. Defendants'

arguments as to plaintiff's duty to report non-illegal conduct that could be "detrimental" to the department is less compelling since the Manual provides no guidance as to what is considered "detrimental."

In reviewing the evidence, the Court must construe all evidentiary inferences in favor of plaintiff, the non-moving party. The record does not establish as a matter of law that, in carrying out his job duties as a state trooper, that he was expected as a practical matter to investigate or report all potential wrongdoing within the division. See Drolett v. DeMarco, Jr., 2007 WL 1851102 (D.Conn. 2007) (police department rules and regulations did not establish duty as a matter of law to report problems through the chain of command).

Plaintiff has adduced competing evidence giving rise to an inference that the workplace culture was hostile to such self-policing or internal reporting of officer misconduct. This not an instance where no relevant analogue to speech by citizens who are not government employees exists, since any citizen may report suspicions of public corruption or illegal conduct to the relevant officials.

Thus, it remains a question of fact as whether plaintiff's speech concerning Murphy's alleged potentially unlawful and other misconduct was born out of his professional duty as a state trooper. Accordingly, the Court does not find that Garcetti compels summary judgment on plaintiff's retaliation claim.

The Court must next to turn to whether plaintiff's speech addressed a matter of public concern, which is a question of law. Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991), cert. denied, 502 U.S. 1013 (1991). In making this determination, the Court must look to the "content, form and context of the given

statement, as revealed by the record as a whole. " Connick, 461 U.S. at 146; Reuland v. Hines, 460 F.3d 409, 416 (2d Cir. 2006). Generally, the First Amendment protects speech on any matter or policy, social or other community concern. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (speech on crime rates, police staffing, equipment shortages and related budgetary matter involved matters of public concern). The Court should also look to "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Hoyt v. Andreucci, 433 F.3d 320, 330 (2d Cir. 2006) (internal grievance may touch on matter of public concern).

Defendants have argued that plaintiff's complaint was initiated as retaliation for Sergeant Murphy's filing a negative POR about him. Plaintiff stated in his deposition that he filed an official internal report after he noticed that employees were still conducting personal business on state time, although he had previously complained to his supervisors of Murphy's misconduct. Captain Samuels advised him that he should go forward with his complaints "to clean house." Based on the record adduced, the Court cannot determine as a matter of law whether plaintiff's complaint was calculated to redress his personal grievance with Murphy or to further a broader public goal. Plaintiff's evidence raises an inference that plaintiff made his complaint for the broader public purpose "to clean house" or removing corruption and mismanagement from the department. Even if plaintiff's speech were compelled by mixed motivations, his speech would still deserve First Amendment protection. Johnson v. Ganim, 342 F.3d 105, 114 (2d Cir. 2003).

Reviewing the subject matter of each statement, the Court finds that plaintiff's statements touch upon matters of public concern. Mismanagement of the budget – –

misallocation of expenses and allowance of employees to use state time and resources to complete personal business – – relates to public funds, which are clearly of public concern. Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999) ("Courts have frequently found that the public fisc is a matter of public concern").  As defendants have emphasized, plaintiff's complaint alleged potential illegal conduct by Murphy, and public corruption or wrongdoing is almost always of public concern. Johnson, 342 F.3d at 113.  Further, plaintiff's statements that Murphy filed official reports with false information, exercised favoritism, and mismanaged personnel also touch upon a public concern relative to the policies and practices of the state police trooper force. Drollett, 2007 WL 1851101 at *7.  Thus, the Court will reserve determination of whether plaintiff's speech is a matter of public concern until the facts are presented at trial.

Defendants argue further that summary judgment is appropriate because 1) plaintiff suffered no adverse employment action, and 2) plaintiff voluntarily resigned from his position.  Consistent with its prior ruling denying summary judgment, the Court finds that disputed issues of fact preclude summary judgment as to whether plaintiff suffered any adverse employment action, was constructively discharged, or whether the speech at-issue was a substantial or motivating factor in any adverse employment action.

Qualified Immunity

Defendants assert that they are entitled to qualified immunity even if the Court denies summary judgment on the merits of the First Amendment retaliation claim. Qualified immunity shields government officials from personal liability when they perform discretionary duties pursuant to their official functions so long as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the first stage of the qualified immunity analysis, the court must consider whether the facts, taken in a light most favorable to the plaintiff, could show a constitutional violation. Cowan v. Breen, 352 F.3d 756, 760 (2d Cir. 2003). If so, the court must determine whether the right in question was clearly established at the time the violation occurred. Saucier, 533 U.S. at 201.

In determining whether a right is clearly established, the court considers whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Poe v. Leonard, 282 F.3d 123, 132 (2d Cir. 2002). Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998). An officer is still entitled to qualified immunity, if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular context. Malley v. Briggs, 475 U.S. 335, 341 (1986).

Taking the facts most favorably to plaintiff, plaintiff could establish that he was retaliated against in violation of his First Amendment rights. The right to be free from retaliation based on free exercise of speech is a clearly established right. See Johnson, 342 F.3d at 116. Based on the existing questions of fact, including whether plaintiff suffered a constructive discharge, the Court cannot determine as a matter of law whether it was objectively reasonable for defendants to believe that their actions did not violate the law.

Equal Protection

Defendants argue that they are entitled to summary judgment on plaintiff's "class of one" equal protection claim.

The equal protection clause extends to individuals with no specific class membership but who have been intentionally treated differently from others similarly situated without a rational basis for that treatment. Harlen v. Inc. Vill. of Meneola, 273 F.3d 494, 499 (2d Cir. 2001). The United States Supreme Court has established that one may assert an equal protection claim as a class of one where a plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiff must present evidence that he was treated differently than others "similarly situated." Neilson v. D'Angelis, 409 F.3d at 105. To be "similarly situated," the individuals with whom plaintiff attempts to compare himself must be similarly situated in all material respects" and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997). The test of similarity in a "class of one" case is a showing that: "i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Neilson, 409 F.3d at 105-106.

Plaintiff proffers no individuals who may be considered "similarly situated"

comparators. Thus, plaintiff raises no inference of fact that he was treated differently than other similarly situated individuals. Summary judgment is appropriate on the equal protection claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [#46] is GRANTED in part and DENIED in part. Summary judgment is GRANTED as to the equal protection claim.

Dated this _9th__ day of August, 2007 in Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE